CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

CHARLES F. BISESTO (CABN 271353)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-6405
FAX: (415) 436-7234
Charles.Bisesto@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EDGAR SAUL PUERTO-BANEGAS,<br><br>Defendant. | CASE NO. 3:26-CR-00549 JSC<br><br>**UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR JOINT CHANGE OF PLEA AND SENTENCING**<br><br>Date: November 18, 2026<br>Time: 10:00 a.m.<br>Court: Hon. Jacqueline S. Corley |

## I. OVERVIEW

The United States and the defendant, Edgar Saul Puerto-Banegas, jointly request that the Court accept the proposed plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). This case is part of the United States Attorney's Office's efforts to disrupt the fentanyl open-air drug market that exists in San Francisco's Tenderloin District through a combination of enforcement and dispositions that prevent drug traffickers from returning to the Tenderloin. These efforts will occasionally take the form, as here, of prosecution of street-level fentanyl dealing where the defendant is apprehended during a controlled undercover purchase and elects to promptly accept responsibility, waive indictment, and proceed directly to sentencing.

For the reasons set forth below, the United States and the defendant jointly submit that the agreed-upon sentence of time served plus one business day, together with a three-year term of supervised release containing a strict Tenderloin stay-away condition, satisfies the objectives of 18 U.S.C. § 3553(a) and constitutes a sentence sufficient but not greater than necessary.

## II. MOTION FOR JOINT CHANGE OF PLEA AND SENTENCING

To advance the goal of this accelerated disposition, the parties jointly move the Court to proceed to sentencing without a presentence investigation report during the same hearing as the defendant's change of plea, or as shortly thereafter as is practicable. This will achieve the expedited proceeding contemplated by both parties. The Court may sentence without a presentence investigation report if it "finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553" and "explains its finding on the record." Fed. R. Crim. Proc. 32(c)(1)(A)(ii); *see also* Fed. R. Crim. P. 32(b)(1), U.S.S.G. §6A1.1, Crim. Local Rule 32-1(b).

The government respectfully submits that the record here, the Criminal Complaint, the Plea Agreement, and the parties' sentencing memoranda, all detailing the defendant's offense conduct and other factors relevant under § 3553, enable the Court to meaningfully exercise its sentencing authority under § 3553 and proceed to sentencing without the need for a presentence investigation report. The parties request that the Court explain its findings and the sufficiency of the record at time of sentence.

## III. APPLICABLE GUIDELINES RANGE AND CRIMINAL HISTORY CATEGORY

The government calculates the following Guidelines range:

| | | |
|---|---|---|
| a. | Base Offense Level, U.S.S.G. §2D1.1(a)(5), (c)(14):<br>Defendant distributed approximately 0.711 grams of fentanyl. | 12[1] |
| b. | Acceptance of Responsibility, U.S.S.G. §3E1.1: | - 2 |
| c. | Adjusted Offense Level: | 10 |

The government calculates a Criminal History Category of I based on one criminal history point arising from a 2022 San Francisco conviction for accessory and contempt offenses.

[1] Laboratory testing confirmed that the fentanyl distributed by the defendant to the undercover officer had a net weight of approximately 0.711 grams. Because the offense involved at least 0.4 grams but less than four grams of fentanyl, the applicable base offense level is 12 pursuant to U.S.S.G. § 2D1.1(c)(14).

An Adjusted Offense Level of 10 and a Criminal History Category of I results in a Guidelines range of 6 to 12 months.

The government also seeks a three-year term of supervised release (as required by statute) and imposition of the $100 mandatory special assessment.

## IV. SENTENCING RECOMMENDATION

Consistent with the Plea Agreement in this case, the parties jointly request a sentence of time served plus one business day and a three-year term of supervised release that includes a special condition that the defendant may not re-enter the Tenderloin during the period of supervised release. This stay-away condition is a critical component of the plea bargain because it prevents the defendant from returning to the Tenderloin, from where the defendant's conviction for drug trafficking arises.

### A. Section 3553 Factors

#### 1. *Nature and circumstances of the offense and history and characteristics of the defendant*

The defendant is a Honduran citizen who unlawfully entered and remains in the United States. According to information reviewed by the government, he has resided in the United States for approximately seven years and currently resides in San Francisco with his longtime girlfriend and their children. He has worked in construction and painting jobs in the Bay Area.

On August 5, 2026, officers assigned to a Tenderloin narcotics enforcement operation conducted an undercover narcotics purchase near Hyde Street and O'Farrell Street. An undercover officer first observed the defendant engage in what appeared to be a hand-to-hand narcotics transaction. The officer then approached the defendant and requested to purchase $30 worth of fentanyl. The defendant accepted the money, obtained a supply of narcotics from a nearby associate, and provided fentanyl to the undercover officer in exchange for the marked city funds.

Following the transaction, officers immediately arrested the defendant and recovered approximately $34.35 in U.S. currency, including the marked city funds used in the undercover purchase, along with a cellular telephone and a fixed-blade knife. Officers also recovered additional fentanyl and cocaine base from the associate who supplied narcotics to the defendant moments before

the sale.

Laboratory analysis subsequently confirmed that the substance sold to the undercover officer contained fentanyl and 4-ANPP, with a net weight of approximately 0.711 grams. The defendant admitted in the Plea Agreement that he knowingly possessed fentanyl with intent to distribute it and knowingly distributed fentanyl to the undercover officer.

The defendant also acknowledges that he is a citizen of Honduras who lacks lawful immigration status and that his conviction makes removal from the United States practically inevitable.

2. ***Need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant***

The Tenderloin, defined in the Plea Agreement to include the historic Tenderloin District and much of the South of Market neighborhood, is in crisis. As the Court is well aware, the proliferation of highly addictive, potent, and inexpensive synthetic controlled substances like fentanyl and methamphetamine has exacted a crushing human toll in the Tenderloin. The Tenderloin open-air drug market not only creates suffering for its participants (including staggering amounts of overdoses and fatalities) but also dire externalities for the people and families that live and work in the Tenderloin, as well as for San Francisco itself. The effects of the defendant's offense, considered as an individual act, are destructive; the effects of the offense, considered in the aggregate, are catastrophic.

Given the defendant's offense conduct and the quantity of fentanyl involved in the offense, the advisory Guidelines range is 6 to 12 months. The defendant is in Criminal History Category I based on a single criminal history point. Although the defendant has prior contacts with the criminal justice system, his criminal history score places him in Category I for Guidelines purposes.

The proposed sentence—of time served plus one business day and a three-year term of supervised release with a highly-restrictive geographic restriction—is a downward variance from the Guidelines range but one that the government submits is justified by the defendant's prompt acceptance of responsibility, agreement to expedited proceedings, continued detention since arrest, significant immigration consequences, and the substantial deterrent effect of the three-year supervised-release term and Tenderloin stay-away condition.

More specifically, in order for the defendant to receive this plea offer, the defendant agreed to remain detained and has been in continuous custody since arrest; the government offered the defendant a time-served sentence in exchange for the defendant's agreement to promptly plead guilty and proceed to sentencing (including waiving indictment) within weeks of arrest; the defendant also agreed to be subject to a three-year term of supervised release that includes a strict stay-away condition from the Tenderloin. The defendant is on notice that a return to the Tenderloin (in violation of the defendant's supervised release terms) will invite new charges or supervised release violations.

This disposition results in a drug trafficking conviction within weeks of arrest (not months or years), immediate separation of the defendant from the Tenderloin, and prevention of the defendant from returning to the Tenderloin. The speed at which this case moved will free up other government resources to prosecute additional federal crimes, including in the Tenderloin.

**B. <u>The necessity of the proposed supervised release special conditions</u>**

A three-year term of supervised release is required by statute for the drug-trafficking offense to which the defendant has agreed to plead guilty, 21 U.S.C. § 841(b)(1)(C), and it is essential to this disposition. In particular, the special stay-away condition of release allows the government to accomplish one of its primary goals related to protection of the public: to immediately separate drug traffickers from the Tenderloin (given the defendant has remained in custody from the time of arrest) and to effect a strict stay-away from the Tenderloin for three years. Under the terms of supervised release as contemplated herein, not only will the defendant be prohibited from engaging in any further unlawful conduct, but the defendant will be prohibited from entering the Tenderloin without prior approval by U.S. Probation:

> Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in the area in San Francisco bordered on the west by Laguna Street, on the north by Sutter Street, on the east by Powell Street and 5th Street, and on the south by Folsom Street.

Combined with a suspicionless search condition, to which the parties have also agreed, Section 3553(a)'s goals of protection of the public and meaningful deterrence will be significantly advanced by the terms of this agreement, and this prosecution's impact on illicit drug trafficking in the Tenderloin will be both immediate and sustained. The stay-away condition is also necessary given the particular

circumstances of Tenderloin drug trafficking, where the Court has repeatedly encountered recidivism from previously sentenced defendants, including those who have been removed from the country but who nonetheless returned to sell controlled substances in the Tenderloin. *See, e.g.*, *United States v. Luis Almicar Erazo-Centeno*, 3:23-cr-00002-CRB; *United States v. Gamez-Arguilio*, 3:17-CR-00553-CRB.

On the facts of this particular case, under the § 3553(a) factors and given the provisions of the Plea Agreement, the government respectfully submits that the contemplated disposition here is sufficient but not greater than necessary to accomplish the goals of § 3553(a).

## V. CONCLUSION

For the foregoing reasons, the United States respectfully recommends that the Court sentence defendant Edgar Saul Puerto-Banegas to time served plus one business day, followed by three years of supervised release, including the special conditions contained in the Plea Agreement, most notably the Tenderloin stay-away condition and search condition.

DATED: November 12, 2026

Respectfully Submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Charles F. Bisesto*
CHARLES F. BISESTO
Assistant United States Attorney